Ross Graham, Appellant *v.* Mars Area School District, Appellee.

Argued May 5, 1980, before Judges MENCER, ROGERS and WILLIAMS, JR., sitting as a panel of three.

*John J. Morgan,* for appellant.

*Charles E. Dillon, Dillon, McCandless, King & Kemper,* for appellee.

OPINION BY JUDGE ROGERS, June 10, 1980:

Ross Graham has appealed from an order of the Court of Common Pleas of Butler County, upholding the action of the Board of School Directors of the Mars Area School District refusing Graham a regular contract of employment and dismissing him from its service.

Graham was employed by the Mars Area School District as a physical education instructor under a temporary professional employee contract for the school years 1974-75 and 1975-76. He was assigned to teach classes in an elementary school, a middle school and a high school, each under a different school principal. The district superintendent rated Graham's work unsatisfactory during the last four months of his second year of service and notified him that he would recommend that the board not renew his contract. The School Board, at Graham's request, conducted a public hearing on the superintendent's recommendation pursuant to the Local Agency Law, Act of December 2, 1968, P.L. 1133, *as amended,* formerly 53 P.S. §11301 et seq., repealed by the Act of April 28, 1978, P.L. 202, §2(a), but now to be found at 2 Pa. C.S. §§101-106, 2 Pa. C.S. §§551-555 and 2 Pa. C.S. §§751-754.

At the start of the hearing, Graham's attorney requested "the right" as he put it, "to voir dire each member of the Board", sitting to hear the case as required by law, "to determine prior knowledge, prior discussions, prior resolutions, prior discussion [sic] or viewing of evidence or any other matter

which may have occurred prior to this hearing in which School Board members may have been involved and which had resulted in the [members] not being able to provide my client with due process of law.'' The request was refused. After three long nights of hearing, the Board voted not to tender Graham a regular contract of employment. *See* Section 1108 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1108.

Graham first says that he was denied due process by the School Board's refusal to submit its members to voir dire examination. No authority for the right to conduct a voir dire examination of the members of an administrative agency engaged in the adjudicative process is cited and none seems to exist. Voir dire is the examination and interrogation of prospective jurors; its purpose is to assist counsel in challenging jurors for cause, so that a competent, fair, impartial and unprejudiced jury may be seated. *Commonwealth v. McGrew,* 375 Pa. 518, 100 A.2d 467 (1953). The differences between the process of selecting and the functions of juries on the one hand, and administrative agencies with quasi-judicial powers on the other are too plain to require our exposition. Voir dire is not available to test members of administrative bodies engaged in adjudicating issues committed to their decision. The administrative process should be speedy, cheap and simple, keeping the role of lawyers to the minimum necessary to achieve fairness. *See* Professor K. Davis's hornbook, Administrative Law Text 14 (3rd ed. 1972).

Of course, due process must be accorded in administrative proceedings and of course unfair and biased adjudications of administrative agencies will be set aside. However, the matters concerning which Graham's hearing counsel desired to examine the

school board members—prior knowledge, prior discussions, prior resolutions or viewing of evidence—are not events, even if shown to have occurred, which would impugn the fairness of the members, or otherwise offend due process. *Withrow v. Larkin,* 421 U.S. 35 (1975); *Rayne v. Edgewood School District,* 19 Pa. Commonwealth Ct. 353, 339 A.2d 151 (1975).

On the merits, Graham raises two questions, neither of which is meritorious. He first says that the final rating of unsatisfactory made by the superintendent of schools was ineffective because it was not supported by anecdotal records. Section 1123 of the Public School Code of 1949, 11 P.S. §11-1123, requires ratings to be done by a system approved by the Department of Education and on a rating card prepared by the Department. The rating card is called DEBE-333 and references on that card to anecdotal records provide the requirement of anecdotal records. Graham was rated on a number of occasions during his two years at Mars Area School District and before he was given his final rating he was given anecdotal reports (and suggestions for improvements) on at least three occasions. The superintendent's final unsatisfactory rating was not, it is true, accompanied by still another anecdotal report, nor was it required to be. Form DEBE-333, which provides spaces for three categories of ratings: "general rating", in which the school official doing the rating merely signs a block opposite the word satisfactory or unsatisfactory; "detailed appraisal", in which the official must rate the teacher's performance in specific functions; and "final rating", in which the district superintendent certifies that the teacher has received either a satisfactory or unsatisfactory rating for the period of his employment. Under the category "general rating", the form provides: "3. Ratings should

have the support of anecdotal records. In the case of UNSATISFACTORY ratings, such records must be maintained in the office of the superintendent of schools and a copy supplied to the employe immediately after it has been completed." (Emphasis in original.) Similarly, under "detailed appraisal", the form provides: "3. Whenever an unsatisfactory rating is given, each such recorded rating must be stated and the specific circumstances cited. The record must include specific details of evidence likely to be important in case the services of a teacher are to be discontinued or dismissed." However, the "final rating" space on the form, which was executed by the superintendent, contains no requirement that a rating of unsatisfactory be accompanied by anecdotal records or specific details supporting the rating. On the contrary, the form provides that " 'FINAL RATING' may represent a number of separate ratings during the period of employment." According to the superintendent, Graham's final rating of unsatisfactory was based on three separate unsatisfactory ratings, one prepared by the superintendent and two prepared by the principal of the middle school at which Graham taught. Graham received timely notice of each of the three separate ratings and, as noted, was given detailed anecdotal support for these ratings. The superintendent was not required to provide another copy of the anecdotal records with his final rating of Graham.

Finally, Graham argues that the final rating of unsatisfactory was made arbitrarily and capriciously. As we have noted, the final rating was based on at least three earlier unsatisfactory ratings, not to mention personal observations of Graham's teaching by the superintendent and a principal. While it is true that Graham presented evidence of some satisfactory

(albeit very low) ratings made by two other principals, there remained substantial record evidence supporting the School Board's decision.

Order affirmed.

### ORDER

AND Now, this 10th day of June, 1980, the order of the Court of Common Pleas of Butler County dated July 20, 1977 is affirmed.