

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2005

# McGreevy v. Stroup

Precedential or Non-Precedential: Precedential

Docket No. 03-4624

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"McGreevy v. Stroup" (2005). *2005 Decisions*. Paper 906.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/906

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4624

———

LINDA MCGREEVY,
Appellant

v.

ROGER STROUP, individually and in his official capacity as
Principal of Bermudian Springs Elementary School;
KATHLEEN TSOSIE, individually and in her capacity as
Assistant Principal of Bermudian Springs
Elementary School District;
GERALD SOLTIS, individually and in his official capacity as
Superintendent of Bermudian Springs School District;
BERMUDIAN SPRINGS SCHOOL DISTRICT

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cv-01461)
District Judge: Honorable Sylvia H. Rambo

———

Argued: October 4, 2004

Before: SLOVITER, BECKER, and STAPLETON,
Circuit Judges.

(Filed:   June 28, 2005)

———

Richard C. Angino   (Argued)
Angino & Rovner
Harrisburg, PA 17110

Attorney for Appellant

Stephen S. Russell   (Argued)
Stock & Leader
York, PA 17404

Attorney for Appellees

———

OPINION OF THE COURT

———

SLOVITER, Circuit Judge.

Linda McGreevy, a school nurse, filed this civil rights action under 42 U.S.C. § 1983, against defendants: the Bermudian Springs School District (the "District"); Gerald Soltis, the District's superintendent; Roger Stroup, principal of the Bermudian Springs Elementary School; and Kathleen Tsosie, the assistant principal of the Bermudian Springs Elementary School, claiming that defendants violated her First Amendment rights by giving her a grossly unsatisfactory employment rating in retaliation for her advocacy on behalf of two disabled students and her reports to state authorities regarding perceived violations of state requirements.

The United States District Court for the Middle District of Pennsylvania granted defendants' motions for summary judgment on all but one issue. During trial, the Court granted defendants' motion for judgment as a matter of law on the remaining issue. McGreevy filed a timely notice of appeal.[1]

———

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction to review the District Court's final orders pursuant to 28 U.S.C. § 1291.

2

# I.
# Facts

Linda McGreevy was employed as the school nurse at the Bermudian Springs School District Elementary School beginning in 1994. McGreevy is a licensed professional nurse, a pediatric nurse practitioner, and a certified school nurse. She holds a school nurse certificate from Millersville University, a Masters of Education from Penn State University, a certified nurse practitioner degree from the College of Medicine and Dentistry of New Jersey and Rutgers and a Bachelor of Science Nursing Degree from Fairleigh Dickenson University. She is also qualified to be a school principal. Between 1994 and 1999, McGreevy consistently received outstanding employment ratings, scoring 75 or higher out of a possible 80 points. Under the District's categories of ratings, 75-80 is considered "excellent," the highest possible category.

In 1999, McGreevy began to speak out on four issues which the District Court concluded were constitutionally protected speech. She advocated on behalf of the mother of two orthopedically disabled children in order to gain them special assistance; she criticized the School District's employment of an unlicensed individual to conduct pesticide spraying which caused many students and teachers to become ill; she communicated with the Pennsylvania Department of Health regarding her incorrect listing as supervising middle school nurse; and she filed two complaints with the state's Office for Civil Rights, one with respect to the District's handling of the two children and the other regarding her employment rating of 71 for the 1999-2000 school year.

In advocating for the two disabled boys, McGreevy contacted the Bureau of Compliance of the Pennsylvania Department of Education and spoke with Brenda Tantow. The exact content of this conversation is in dispute. According to Tantow, McGreevy told her that the children were in danger of being physically injured, that the District kept two sets of records on the children, and that principal Stroup was gathering information against the boys' mother to release to Children's

3

Services in an effort to have them removed from their home. McGreevy denied making the latter two statements.[2] There was a meeting involving McGreevy, Soltis, Stroup and the former assistant superintendent of the District to discuss McGreevy's alleged statements to Tantow. Afterwards, Soltis prepared a memorandum summarizing the meeting, which was placed in McGreevy's personnel file.

Shortly after the conversation with Tantow, McGreevy informed the Pennsylvania Department of Health that unlicensed pesticide spraying had occurred at the school and that, as a result, a number of students and teachers had become ill. McGreevy's information led to an investigation and ultimately the Pennsylvania Department of Agriculture levied a fine on the District. Soon after the spraying incident, McGreevy learned that she was incorrectly listed as the middle school nurse and she so informed the Department of Health.[3] As a result, the Pennsylvania Department of the Auditor General, Office of Special Investigations, began an investigation of the School District and eventually ordered withholding of future reimbursements from the Pennsylvania Department of Health for school nurse services. At the end of the 1999-2000 school year McGreevy received a rating of 71, her lowest rating to date.

According to McGreevy, shortly after the Auditor

---

[2] The District Court noted in its opinion that the mother of the boys also confirmed that McGreevy did not give her the misinformation alleged. App. at 5-6.

[3] The middle school had a Licensed Nurse Practitioner (LNP) but under the Practical Nurse Law a LNP must act under the supervision of a professional nurse. The Public School Code provision, 24 Pa. Const. Stat. §§ 1402(a.1), 1401(8), requires a school district to provide each student with school nurse service by a licensed, registered nurse properly certificated by the Superintendent of Public Instruction. In this case, it was incorrect to list McGreevy, who was the certified nurse for the elementary school, as the certified nurse for the middle school because McGreevy did not supervise the LNP.

4

General began his investigation of the School District in December of 2000, the school officials significantly increased their harassment of her. McGreevy states that she was constantly criticized and berated by principal Stroup, assistant principal Tsosie and superintendent Soltis. McGreevy claims that because of this harassment, she suffered such constant and severe migraine headaches that she was compelled to take a two-week leave and ultimately compelled to resign, which she attempted by letter dated March 20, 2001.

According to the District, McGreevy's March resignation was ineffective and hence not accepted. As a result, the District's counsel sent McGreevy a letter dated May 7, 2001 stating that if she did not return to work by May 14, 2001 she would be deemed to have abandoned her employment, her employment would be terminated and she would be replaced. McGreevy did not return to work and was notified by letter, dated July 17, from the attorney for the School Board that she was deemed to have abandoned her position and the District was determining whether to dismiss her. That letter also warned her about the possible loss of her RN license.

On June 1, 2001, McGreevy received a copy of her official rating of 40 for the 2000-2001 school year. On November 2, 2001, the District informed the Public School Employees Retirement Systems that McGreevy had been terminated as of November 2, 2001. On November 30th, the School Board sent her a written list of reasons for her dismissal and informed her that there would be a hearing to determine if she should be dismissed. It is McGreevy's position that her employment had been terminated the previous spring.

On August 2, 2001, McGreevy filed a complaint under 42 U.S.C. § 1983, alleging violations of her First Amendment rights and unlawful taking of her intellectual property without due process of law. That complaint named as defendants the District and school officials Soltis, Stroup and Tsosie in their official and individual capacities. McGreevy filed a motion to amend her complaint on September 18, 2002, to add, inter alia, state law claims of libel, slander, tortious interference with

5

contract, common law conspiracy, and intentional infliction of emotional distress. The District Court denied McGreevy's motion as to her intentional infliction of emotional distress and § 1983 takings claims, but permitted her to file an amended complaint asserting her § 1983 First Amendment claim, and her state law claims of defamation, tortious interference with contract and common law conspiracy.

Following several pre-trial motions, the District Court issued a summary judgment order on March 26, 2003 dismissing McGreevy's § 1983 claim against the District, stating that there was no "evidence of any policy, practice or custom" of its Board of Directors that violated McGreevy's First Amendment rights. The same order dismissed McGreevy's complaint against all three officials in their individual capacities on the ground that they were entitled to qualified immunity. Finally, the Court dismissed all remaining claims asserted in the amended complaint. The sole remaining issue left for trial was "whether Defendant Soltis, Stroup and Tsosie, acting in their official capacities, retaliated against Plaintiff by giving her a 40 out of 80 on her June of 2001 employment evaluation." App. at 1.

Trial commenced on September 2, 2003. At the close of McGreevy's case, the District Court granted defendants' motion for judgment as a matter of law, stating that "[p]laintiff presented no evidence from which a reasonable jury could conclude that either the District or the school officials in their official capacities had a practice or custom of using these evaluations for [a retaliatory purpose]." App. at 41.

This appeal followed.

## II.
### Discussion

### A. Standard of Review

We have plenary review over the District Court's grant of summary judgment and apply the same standard as the District Court. Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d

6

Cir. 2002). We must view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion and decide "whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for [the non-moving party]." Debeic v. Cabot Corp., 352 F.3d 117, 128 n.3 (3d Cir. 2003) (citing Fed. R. Civ. P. 56(c)). The standard of review for orders granting judgment as a matter of law is also plenary and we likewise apply the same standard as the District Court. "A motion for judgment as a matter of law under Federal Rule 50(a) should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (internal quotations omitted).

## B. **Individual Capacity Liability**

McGreevy argues that the District Court erred in holding that the individual defendants were entitled to qualified immunity on her § 1983 claim against them. The doctrine of qualified immunity shields government officials from civil liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In considering a defendant's motion for summary judgment on the ground of qualified immunity, our task is to first determine whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, "we must next determine whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Defendants are entitled to qualified immunity only if the constitutional or statutory violation alleged is not clearly established.

## 1. **McGreevy's Speech was Protected by the First Amendment**

"Although public employees do not relinquish their right to free speech by virtue of their employment, neither do they enjoy absolute First Amendment rights." Ceballos v. Garcetti, 361 F.3d 1168, 1173 (9th Cir. 2004). To determine whether a public employee's speech is entitled to First Amendment protection, we apply a three-step test derived from the Supreme Court's decisions in Connick v. Myers, 461 U.S. 138 (1983), and Pickering v. Board of Education, 391 U.S. 563 (1968). First, we must determine whether the speech addresses a matter of public concern. See Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001) (citing Connick v. Myers, 461 U.S. 138, 147 (1983). If it does, we then employ the Pickering balancing test to determine whether an employee's interest in the speech outweighs the state's countervailing interest as an employer in promoting workplace efficiency and avoiding workplace disruption. See Pickering, 391 U.S. at 568 (requiring courts to strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of public services it performs through its employees"). Finally, if these criteria are met, plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). A public employer can rebut an employee's claim of retaliation by demonstrating that it would have reached the same decision, even in the absence of the protected conduct. Baldassare, 250 F.3d at 195. Whereas the first and second step inquiries are questions of law for the court, the final inquiry presents a question of fact for the jury.

### a. **Matter of Public Concern**

A public employee's speech addresses a matter of public concern when it relates to an issue of "political, social, or other concern to the community." Connick, 461 U.S. at 146. The Supreme Court has distinguished between employee speech addressing matters of personal interest, and speech which truly target matters of public concern. In Connick, the Court held that an assistant district attorney's solicitation of her colleagues'

8

views on office morale, the policy for transferring employees, the need for a grievance committee, and the level of confidence in supervisors was speech intended primarily "to gather ammunition for another round of controversy" in the individual's personnel dispute. Id. at 148. By contrast, the Connick plaintiff's speech regarding "the issue of whether assistant district attorneys are pressured to work in political campaigns[,] is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." Id. at 149.

In the case before us, it is undisputed that McGreevy's advocacy on behalf of the two disabled students, her notice to state officials that she was not a middle school nurse, and her objection to pesticide spraying by an unlicensed individual, were matters of true public concern. See, e.g., San Filippo v. Bongiovanni, 30 F.3d 424, 435 n.13 (3d Cir. 1994) (stating that a Rutgers University professor was speaking on matters of public concern when he made statements in a school newspaper criticizing the University for inadequate ventilation in the chemistry labs, testified in a grand jury regarding an investigation into the manufacture of illegal drugs in the University's laboratories, criticized the faculty's attempt to secure funding for a mass spectrometer by deceiving federal funding agencies, and voiced his dissatisfaction with senior members of his department over their efforts to obtain an inappropriate percentage of his federal grants); Zamboni v. Stamler, 847 F.2d 73, 78 (3d Cir. 1988) (finding that a civil service employee's criticism of county prosecutor's reorganization and promotion plan was constitutionally protected speech). Defendants do not argue otherwise.

## b. **The Pickering Balancing**

Although McGreevy's speech did concern matters of public interest, it is protected speech only if the court also finds that her interests in the speech outweigh the state's countervailing interests in the "efficiency and integrity in the discharge of official duties, and [in maintaining] proper discipline in the public service." Connick, 461 U.S. at 150-51.

9

The "more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." Hyland v. Wonder, 972 F.2d 1129-139 (9th Cir. 1992).

"Speech involving government impropriety occupies the highest rung of First Amendment protection." Swineford v. Snyder County Pa., 15 F.3d 1258, 1274 (3d Cir. 1994). Therefore, defendants in the present case bear a truly heavy burden. We agree with the District Court that "there is no allegation on the part of Defendants that Plaintiff's conduct greatly disrupted the functioning of the Bermudian Springs elementary school." App. at 18. Because no substantial countervailing administrative interest has been proffered, we hold that for summary judgment purposes, McGreevy's speech was protected by the First Amendment.

## c. Retaliation

Finally, we also agree with the District Court that McGreevy "has satisfied her prima facie burden of proof . . . . [and] it is for the jury to decide whether Plaintiff's constitutionally protected activity was a substantial or motivating factor in Defendant's decision to give Plaintiff 40 out of 80 on her 2000-2001 evaluation." App. at 24. Defendants do not contest this finding.

## 2. The Constitutional Right was Clearly Established

We part ways with the District Court however, over its conclusion that the school officials are entitled to qualified immunity.[4] Despite finding that McGreevy was engaging in protected speech, the court nonetheless found that she "ha[d] failed to come forward with case law that closely corresponds to Defendants' actions which would indicate that Defendants

---

[4] Although McGreevy named assistant principal Kathleen Tsosie as a defendant, at oral argument counsel agreed to drop the claim against her and therefore our decision only pertains to defendants Stroup and Soltis.

10

should have been aware that what they were doing was unlawful." App. at 28. In arriving at this decision, the Court relied heavily on decisions of our sister circuits which hold that "because <u>Pickering</u>'s constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered 'clearly established' for the purposes of the <u>Harlow</u> qualified immunity standard." App. at 27 (citing <u>Guericio v. Brody</u>, 911 F.2d 1179, 1183-85 (6th Cir. 1990); <u>Melton v. Oklahoma City</u>, 879 F.2d 706, 728-29 (10th Cir. 1989); <u>Dartland v. Metro. Dade County</u>, 866 F.2d 1321, 1323 (11th Cir. 1989); <u>Noyola v. Texas Dept. of Human Res.</u>, 846 F.2d 1021, 1024 (11th Cir. 1988); <u>Benson v. Allphin</u>, 786 F.2d 268, 276 (7th Cir. 1986)).

We are not convinced by the District Court's analysis. Recent decisions (many from the same circuits as the above cited cases) have definitively held that "where the [<u>Pickering</u>] balancing factors weigh heavily in favor of the employee, the law is clearly established, and qualified immunity is therefore unavailable." <u>Ceballos</u>, 361 F.3d at 1181; <u>see, e.g.</u>, <u>Kinney v. Weaver</u> 367 F.3d 337, 372 n.41 (5th Cir. 2004) (distinguishing the circuit's prior holding in <u>Noyola</u>, and stating that "[u]nderscoring the fact that Noyola does not purport to command a particular result, three of the four Fifth Circuit <u>Pickering</u> cases that cite <u>Noyola</u> deny the official's claim of qualified immunity"); <u>Paradis v. Montrose Mem'l Hosp.</u>, 157 F.3d 815, 819 (10th Cir. 1998) (denying qualified immunity after <u>Pickering</u> balancing because the case law clearly established that plaintiff's speech was a matter of public concern and entitled to protection under the First Amendment); <u>Williams v. Com. of Ky.</u>, 24 F.3d 1526, 1537 (6th Cir. 1994) (same).

As a general matter, a right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier</u>, 533 U.S. at 202. To be "clearly established" does not mean that "the very action in question has previously been held unlawful," <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002); rather it merely means that in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent. <u>Wilson v. Layne</u>, 526 U.S. 603, 615

11

(1999). Indeed, the Supreme Court has made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741.

In the case before us, the illegality of the officials' actions was "sufficiently clear that they can fairly be said to have been on notice of the impropriety of their actions." Kinney, 367 F.3d at 372. Defendants have not proffered any legitimate countervailing interests in limiting McGreevy's speech, much less a countervailing interest which would outweigh McGreevy's interest in addressing matters of such weighty public concern. When the balance of cognizable interests weigh so heavily in an employee's favor, our cases make plain that the law is clearly established. See, e.g., Czurlanis v. Albanese, 721 F.2d 98, 107 (3d Cir. 1983) (holding that county employees' speech at board meeting was constitutionally protected because it was a matter of public concern and because the county was unable to set forth a sufficient countervailing interest); Monsanto v. Quinn, 674 F.2d 990, 999 (3d Cir. 1982) (holding that internal revenue department employee's speech was constitutionally protected because it was a matter of public concern and because no substantial disruption was alleged); Trotman v. Bd. of Tr., 635 F.2d 216 (3d Cir. 1980) (reversing motion to dismiss for defendants and holding that faculty member's criticism of university president constituted core speech); see also Porter v. Califano, 592 F.2d 770, 773 (5th Cir. 1979) (reversing summary judgment for defendants in a suit by a clerk-typist suspended for writing a letter critical of her superiors because at a minimum, the state must "clearly demonstrate that the employee's conduct substantially and materially interferes with the discharge of duties and responsibilities inherent in such employment").

We therefore hold that qualified immunity must be denied and that the District Court erred in granting summary judgment for the school officials in their individual capacities.

## C. District's Liability

McGreevy also asserted a claim against the District as well as against Stroup and Soltis in their official capacities. The

12

District Court held that the District was entitled to summary judgment because "plaintiff has failed to adduce evidence of any policy, practice, or custom of the Bermudian Springs School Board of Directors that violated her First Amendment rights." App. at 25. The Court held that only the School Board was a final policymaker for purposes of § 1983.

In Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 694 (1978), the Supreme Court established that a municipality cannot be held liable under § 1983 for the constitutional torts of its employees by virtue of respondeat superior. Instead, a municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, City of St. Louis v. Proprotnik, 485 U.S. 112, 127 (1988).

For purposes of deciding the present appeal, we need focus only on the second method by which liability may attach. The Supreme Court's decision in Pembaur makes clear that an official with policymaking authority can create official policy, even by rendering a single decision. As the Court stated in that case, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. at 480. The Court further explained that the power to establish policy is not the exclusive province of the legislature and held that "Monell's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy.'" Id. at 480 (quoting Monell, 436 U.S. at 694). Accordingly, even one decision by a school superintendent, if s/he were a final policymaker, would render his or her decision district policy. Therefore, in order to

13

determine if the District can be held liable for the school officials' actions, in this case McGreevy's 40 rating, we must determine whether superintendent Soltis was a final policymaker, a question of state law.

The District Court believed that under Pennsylvania law, a school superintendent is not a final policymaker. Instead, according to the Court, the "school board is the final policy maker for the district as to all employment decisions [including employment ratings]." App. at 25. The Court then concluded that because the superintendent is not a final policymaker and because the "Plaintiff has failed to adduce evidence of any policy, practice or custom of the Bermudian School Board of Directors that violated her First Amendment rights," the District was entitled to summary judgment. App. at 25.

In holding that a school superintendent is not a final policymaker, the District Court relied on 24 Pa. Const. Stat. §§ 5-508, 5-514, 10-1081 of the Pennsylvania Code. Under § 5-508, a majority vote of the school board is required when "[d]ismissing a teacher after a hearing." 24 Pa. Const. Stat. § 5-508. Similarly, § 5-514 states that the school board has "the right at any time to remove any of its officers, employees or appointees for incompetence, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct." 24 Pa. Const. Stat. § 5-5-514. According to the District Court, these statutes demonstrate that the school board is the final policymaker with regard to all employment decisions, including employee ratings. In addition, the Court further justified its decision by relying on § 10-1081 which lists the "duties of district superintendents" but does not mention employment ratings. Lastly, the District Court relied on decisions of the Courts of Appeals for the Seventh and Eighth Circuits which held that the school board and not the school superintendent has the ultimate responsibility for all school district policies. See Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 653 (8th Cir. 1998); Duda v. Franklin Park

14

<u>Sch. Dist.</u>, 133 F.3d 1054, 1061 (7th Cir. 1998).[5]

The fact that the Pennsylvania Code provides that the school board is the final policymaker regarding dismissal of employees does not mean that a school board action is a prerequisite for imposition of liability on the District. Although dismissal by the school board may be based, in part, on the employee's employment rating, 24 Pa. Const. Stat. § 11-1123 makes clear that the superintendent is the final policymaker over ratings determinations. Section 1123 provides:

> Rating shall be done by or under the supervision of the superintendent of schools or, if so directed by him, the same may be done by an assistant superintendent, a supervisor, or a principal, who has supervision over the work of the professional employe [sic] or temporary professional employe [sic] who is being rated: Provided, That [sic] no unsatisfactory rating shall be valid unless approved by the district superintendent.

<u>Id.</u> This section unambiguously gives the superintendent final policymaking authority with regard to employment ratings.

As we explained in <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d Cir. 1996), "[i]n order to ascertain who is a policy maker a court must determine which official had final, unreviewable discretion to make a decision or take action." <u>Id.</u> at 1213 (internal quotations omitted). In this case, defendants argued, and the District Court agreed, that under <u>Kneipp</u> the School Board is the final policymaker because the Board would have had the power to review McGreevy's rating if she had appealed. We disagree.

---

[5] The District Court made the latter two arguments in its September 4, 2003 judgment as a matter of law (pertaining to the officials' liability in their official capacities) and its December 2, 2003 denial of McGreevy's motion for a new trial, respectively. These discussions, however, are pertinent to the instant discussion.

McGreevy did not appeal to the School Board with respect to her 40 rating, and she was not required to take such an appeal under either the Pennsylvania statute or § 1983. There is no exhaustion requirement under § 1983. Patsy v. Bd. of Regents, 457 U.S. 496, 502 (1982). Absent an appeal, the School Board has no input with respect to an employee's rating. In such cases, the superintendent has final unreviewable authority to issue employment ratings, an authority he can, and did in this case, delegate to the principal.

Pennsylvania case law is in accord. See Milberry v. Bd. of Educ., 354 A.2d 559, 561 (Pa. 1976) (stating that the public school code does not "grant the board sole authority to make decisions concerning the rating . . . of a . . . teacher."); Graham v. Mars Area Sch. Dist., 415 A.2d 924, 926 (Pa. Commw. Ct. 1980) (holding that a "final rating" as opposed to a "general rating," is that "in which the district superintendent certifies that the teacher has received either a satisfactory or unsatisfactory rating for the period of his employment").

Because the school superintendent is a final policymaker with regard to ratings, his ratings and/or those of the school principal constitute official government policy. It follows that the District Court erred in granting summary judgment for the District. A reasonable jury could find that the 40 rating given to McGreevy by the principal and adopted by the Superintendent was in retaliation for the exercise of her First Amendment rights. If the jury so found, the District would be subject to liability.

## D. Official Capacity Liability

The same analysis is applicable to McGreevy's claim against Soltis and Stroup in their official capacities. Mitros v. Borough of Glenholden, 170 F. Supp. 2d 504, 506 (E.D. Pa. 2001) ("Where a suit is brought against a public offic[ial] in his [or her] official capacity, the suit is treated as if [it] were brought against the governmental entity of which he [or she] is an offic[ial].") (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)). In contrast to the District Court's order granting

16

summary judgment for the District, the Court allowed McGreevy's claim against the individual defendants to proceed to trial. In its memorandum dated March 26, 2003, the District Court stated:

> because the court finds that Plaintiff has engaged in constitutionally protected activity and because there has been a prima facie showing of adverse employment action by Defendants, it is for the jury to decide whether Plaintiff's constitutionally protected activity was a substantial or motivating factor in Defendant's decision to give Plaintiff 40 out of 80 on her 2000-2001 evaluation. Accordingly, the court will deny Defendant's motion for summary judgment as to this narrow issue.

App. at 24.

However, at the conclusion of McGreevy's case the Court granted judgment as a matter of law to the individual defendants because "Plaintiff presented no evidence from which a reasonable jury could conclude that either the District or the individual Defendants in their official capacities had a practice or custom of using these evaluations for anything other than their intended purposes." App. at 41. Nothing in the District Court's opinion refers to the issue of whether McGreevy's constitutionally protected activity was a substantial or motivating factor in the decision to give her a 40 rating on her 2000-2001 evaluation. Instead, the District Court used precisely the same reason for granting judgment as a matter of law to the individual defendants acting in their official capacities that it used in granting summary judgment to the District. Inasmuch as we have determined that the grant of summary judgment to the District was erroneous as a matter of law because the District's liability could be based on acts of its policymakers, it follows that there can be liability under § 1983 imposed on those policymakers for actions taken in their official capacities. Therefore, we hold that it was error to grant judgment as a matter of law for the individual defendants in their official capacities.

**E.  The Common Law Claims**

17

McGreevy included in her complaint state law claims of defamation, tortious interference with contract and civil conspiracy. The District Court rejected each of those claims in its second order granting summary judgment.

McGreevy argues that the unsatisfactory rating she received was defamatory because it harmed her reputation and would deter third persons from associating with her. In rejecting this claim, the District Court noted that the employment rating is privileged. Under Pennsylvania law, 22 Pa. Code § 351.21, McGreevy was required to be evaluated once a year. The Pennsylvania Superior Court has held that under such circumstances, "an employee who is a party to the [employment] contract has consented to the publication of such statements, making them absolutely privileged." Baker v. Lafayette Coll., 504 A.2d 247, 249 (Pa. Super. Ct. 1986), aff'd 532 A.2d 399 (Pa. Super. Ct. 1987). It follows that McGreevy's evaluation cannot form the basis of a defamation claim.

The District Court rejected McGreevy's claim for tortious interference with contract on the ground that McGreevy failed to provide evidence to support her claim. McGreevy does not raise that issue in her brief and we therefore deem it waived. Ghana v. Holland, 226 F.3d 175, 180 (3d Cir. 2000).

The District Court rejected McGreevy's conspiracy claim, holding that McGreevy "failed to provide evidence that Defendants acted in a concerted fashion or effort to prevent her from performing her job or her legal duties." App. at 35. The District Court also stated that "Plaintiff has provided no evidence that Defendants committed any underlying tort or engaged in a conspiracy of any sort." App. at 35.

A claim for civil conspiracy requires that two or more people conspire to do an unlawful act. A claim for civil conspiracy "cannot be pled without also alleging an underlying tort." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000). McGreevy argues that the underlying tort was defamation. As stated above, the employment rating was privileged and therefore not defamatory and as a result there is

18

no underlying tort upon which to base a claim of civil conspiracy.

McGreevy also appeals the District Court's October 24, 2002 Order denying her motion to amend her complaint to assert: 1) a state law claim of intentional infliction of emotional distress; and 2) a § 1983 claim alleging an unconstitutional taking of her nursing license due to the District's misrepresentation of her position to state officials. The District Court evaluated the motion to amend under Fed. R. Civ. P. 15, and pursuant to the five factors set forth in Foman v. Davis, 371 U.S. 178 (1962): undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.[6] After careful analysis, the Court determined that both claims were futile. We agree.

The tort of intentional infliction of emotional distress requires a showing that the defendants acted in a manner "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Restatement (Second) of Torts § 46 cmt.; see also Jones v. Nissenbaum, Rudolph & Seidner, 368 A.2d 770, 773 (Pa. Super. Ct. 1976). Although the record indicates that McGreevy's work environment was both unpleasant and stressful, the harassment McGreevy alleges does not meet the Pennsylvania definition for intentional infliction of emotional distress. During the time of the alleged harassment, McGreevy's job tasks never changed, she was never assigned degrading work and she consistently received pay raises. As we stated in Cox v. Keystone Carbon Co., 861 F.2d 390, 393 (3d Cir. 1988), "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Id. at 393.

---

[6]Although the takings claim was asserted in McGreevy's original August 2, 2001 complaint, the District Court evaluated each of the original counts pursuant to the Foman factors as well.

19

As a result, we have no basis to overturn the District Court's order denying McGreevy's proposed amendment.

McGreevy's takings claim alleging that defendants misrepresented her position to state officials fares no better. McGreevy is in possession of her nursing license and she has failed to allege that the District interfered with her possession in any way that would deprive her of its use.

### III.
### Conclusion

For the reasons set forth we will reverse the order of the District Court granting summary judgment to the District and to the school officials in their individual capacities, and we will reverse the order of the District Court granting judgment as a matter of law to the school officials in their official capacities. We will affirm the order of the District Court granting summary judgment on the state law claims.[7]

We will remand this matter to the District Court for further proceedings in accordance with this opinion

_____

[7] Although McGreevy appeals the denial of a motion for a new trial we need not address that issue given our disposition of this case.