**Paul M. SNYDER, Appellant,**

v.

**NORFOLK SOUTHERN RAILWAY CORPORATION.**

No. 06–5084.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 3, 2008.

Filed: April 1, 2008.

Gregory G. Paul, Robert Peirce & Associates, Pittsburgh, PA, for Appellant.

Robert S. Hawkins, Buchanan, Ingersoll & Rooney, Philadelphia, PA, for Norfolk Southern Railway Corporation.

Before: BARRY, JORDAN and HARDIMAN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Appellant Paul Snyder, a locomotive engineer employed by appellee Norfolk Southern Railway Corporation ("Norfolk") since June 1, 1999, claims that Norfolk violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–300 ("ADA") when, believing he suffered

from a certain heart condition, it suspended him for a period of approximately nine months. Snyder appeals from the order of the District Court granting summary judgment in favor of Norfolk. For the following reasons, we will affirm.

## I. Factual and Procedural History

Because we write only for the parties, we set forth only those facts necessary for the disposition of this appeal. Norfolk has established medical guidelines [1] requiring its locomotive engineers to undertake a physical examination every three years in order to assess the engineers' continuing ability to safely operate a locomotive. [2] Indeed, Snyder does not dispute that, given the "highly safety sensitive" nature of the locomotive engineer's position, his physical ability to perform the job is important. He was given such a physical exam on July 15, 2003, which revealed the existence of coronary heart disease stemming from a November 1999 heart attack and a subsequent angioplasty procedure. [3]

Upon learning of Snyder's coronary heart disease, a member of Norfolk's medical department wrote to him requesting that his doctor provide Norfolk with the results of the last stress test following his angioplasty. The letter informed Snyder that the results of the test should be negative for "any evidence of ischemia." In response, Snyder's cardiologist sent to Norfolk the results of a January 30, 2003 stress test, which indicated "some underlying ischemia in the circumflex territory." (J.A. 156.)

Dr. Paula Jo Lina, associate medical director at Norfolk, reviewed Snyder's medical records and determined that he could not safely operate a locomotive because the risk of sudden incapacitation, collapse or even sudden death from his condition could lead to an accident with potentially catastrophic results. Dr. Lina thus informed Snyder by letter dated September 11, 2003 that he was being suspended from active service as an engineer because his present condition "does not permit safe performance of the essential functions of your position." (J.A. 164–65.) The letter emphasized that Snyder was not being discharged; that if his personal doctor disagreed with the grounds of his suspension, he or she, along with Dr. Lina, could choose a neutral doctor to review his case; that if his condition improved, Norfolk would select a physician to reexamine him to determine whether he was able to return to his position; and that if he was interested in filling a vacant position at Norfolk for which he was qualified, he could do so. [4]

Snyder underwent a stress test on May 24, 2004 that proved negative for ischemia.

---

1. The section of Norfolk's "Medical Guidelines and Regulatory Criteria" most pertinent to this appeal is section 3.1.1.2, which provides that employees in safety-sensitive positions, such as locomotive engineers, "who have known coronary artery disease, or who are status post a myocardial infarction or cardiac procedure such as coronary artery bypass or angioplasty will be given individual consideration for fitness for services." (J.A. 141.)

2. The Federal Railroad Administration has promulgated regulations requiring railroad companies such as Norfolk to recertify on a periodic basis, among other things, certain of their locomotive engineers' physical qualifications to perform their job duties. 49 C.F.R. § 240.101. The regulations expressly permit railroads to adopt additional or more stringent requirements than those required by law. *Id.* § 240.1(b).

3. As a result of the heart attack, Norfolk held Snyder out of service from November 1999 until December 2000, when he resumed his position. Snyder has not challenged that suspension.

4. Snyder never sought to fill another position at Norfolk.

On June 4, 2004, Snyder's lawyer sent to Norfolk the results of the test and a letter from Snyder's cardiologist stating that the May 24th stress test "demonstrated normal blood flow to your heart at this time." (J.A. 126–27.) Norfolk reviewed these documents and approved Snyder to return to work without restrictions. Snyder returned to work on July 1, 2004 and assumed the position he had left in September 2003.

On March 15, 2005, Snyder, who remains employed by Norfolk, brought suit against Norfolk, alleging employment discrimination in violation of the ADA, and seeking damages suffered as a result of his approximately nine month suspension. The District Court, in an extremely thorough opinion, granted Norfolk's motion for summary judgment on the ground that Snyder failed to demonstrate he had a nonlimiting disability that Norfolk regarded as "substantially limiting" him in the performance of the major life activity of pumping and circulating blood. We have jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir.2005).

## II.  Discussion

In order to establish a prima facie case of discrimination[5] under the ADA, a plaintiff must prove the following: " '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment

decision as a result of discrimination.' " *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir.1999) (quoting *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir.1998)). A "disability," in turn, is defined to mean "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Taylor*, 184 F.3d at 305–06.

Where, as here, a plaintiff claims that he or she is "being regarded as having such an impairment," the plaintiff must demonstrate that either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). EEOC regulations provide, in part, that in determining whether an individual is substantially limited in a major life activity, courts should consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the actual or expected permanent or long term impact of the impairment. 29 C.F.R. § 1630.2(j)(2).

Snyder claims that he had a nonlimiting impairment—ischemia—that Norfolk mistakenly regarded as being an impairment that substantially limited him in the major life activity of pumping and circulating blood.[6] We disagree. Under the ADA,

---

**5.** As the District Court correctly found, the actions of which Snyder complained served as direct evidence of discrimination and, consequently, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) did not apply.

**6.** We need not decide whether the District Court correctly determined that pumping and circulating blood constitutes a major life activity because Snyder, in any event, failed to demonstrate that Norfolk mistakenly regarded him as being "substantially limited" in that activity.

"an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment ... are preferable to others, just as it is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job." *Sutton,* 527 U.S. at 490–91, 119 S.Ct. 2139.

Norfolk did precisely what the ADA allows: it decided that because of Snyder's ischemia, he should not be working as a locomotive engineer given the possibility, however slight, that while performing his duties he could suddenly become incapacitated with potentially disastrous results. Moreover, Norfolk's actions demonstrate that it believed that while Snyder's impairment surely limited him, it did not substantially limit him. Snyder's suspension letter expressly stated that he was not being discharged, and that he would be reinstated to his position if his condition improved such that he met the requirements of Norfolk's medical guidelines. Dr. Lina, in her deposition, reiterated her belief that ischemia is not necessarily permanent; that an individual who tests positive for ischemia can later test negative for it; and that this is precisely what happened with Snyder. Snyder failed to adduce any evidence raising a triable issue of material fact as to Norfolk's belief that Snyder's impairment was substantial; indeed, all of the evidence points to the opposite conclusion.

For the foregoing reasons, we will affirm the order of the District Court.