**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3281
_____

G.S., as an individual and mother and
natural guardian of S.S., a minor; S.S., a minor,
Appellants,

v.

PENN-TRAFFORD SCHOOL DISTRICT;
GREGORY CAPOCCIONI;
ANTHONY AQUILIO;
MATTHEW HARRIS;
SCOTT INGLESE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2-18-cv-00204)
District Judge: The Honorable William S. Stickman, IV
_____

Argued September 24, 2021
_____

Before: McKEE,* RESTREPO, and ROTH, *Circuit Judges*

(Opinion filed: July 12, 2023)

Alexander H. Lindsay, Jr. **[ARGUED]**
Lindsay Law Firm
110 East Diamond Street
Suite 301
Butler, PA 16001

Jessica L. Tully
Ruder Law
301 Grant Street
One Oxford Circle
Suite 270
Pittsburgh, PA 15219

      *Attorneys for Appellants*

Michael L. Brungo **[ARGUED]**
Maiello Brungo & Maiello
Southside Works
424 South 27th Street
Room 210
Pittsburgh, PA 15203

Gary H. Dadamo
Sweet Stevens Katz & Williams
331 East Butler Avenue
P.O. Box 5069
New Britain, PA 18901

      *Attorneys for Appellees*

_____

OPINION[**]

_____

_____

[*] Judge McKee assumed senior status on October 21, 2022.

[**] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

G.S., mother of then-high school student S.S., appeals the District Court's

dismissal of the amended complaint[1] she filed on behalf of S.S. against the Penn-Trafford

School District and four administrators. The District Court dismissed the amended

complaint for failure to state a claim. This suit involves a First Amendment retaliation

claim and a 42 U.S.C. § 1983 claim under *Monell v. Dep't of Soc. Servs. of the City of

New York*.[2] For the reasons that follow, we must again vacate the District Court's order

dismissing the amended complaint and remand for further proceedings consistent with

this opinion.[3]

## I.[4]

### A. First Amendment Retaliation Claim

G.S. alleges that four officials retaliated against S.S. for complaining that she

(S.S.) was bullied and assaulted in school. They are (1) Anthony Aquilio, Principal; (2)

Gregory Capoccioni, Assistant Principal; (3) Matthew Harris, Superintendent; and (4)

Scott Inglese, Assistant Superintendent. To establish a First Amendment retaliation

claim, a plaintiff "must allege: (1) constitutionally protected conduct, (2) retaliatory

---

[1] By way of background, we previously held that the District Court erred in not allowing Plaintiffs to amend the original complaint. We reversed and remanded with instructions to permit an amendment. *See G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799 (3d Cir. 2020). That amended complaint is now the focus of this appeal.

[2] 436 U.S. 658 (1978).

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[4] Our review of a dismissal for failure to state a claim pursuant to Rule 12(b)(6) is plenary. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).

action sufficient to deter a person of ordinary firmness from exercising his/her constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory actions."[5] We address each of these issues in turn.

*1. Constitutionally protected activity*

"[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection—such as obscenity, 'fighting words' and libel—all speech is protected by the First Amendment."[6] This protection includes private speech that is not related to matters of public concern.[7] Furthermore, it has been established for many decades that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[8]

However, where, as here, a student asserts a First Amendment claim in school, we weigh First Amendment rights "in light of the special characteristics of the school environment."[9] Students may exercise their First Amendment rights unless doing so would "materially and substantially disrupt" school operations.[10] Obviously, the law would afford a student's right to free speech little protection if school authorities could retaliate against a speaker solely because of his or her statements.[11]

---

[5] *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003)).
[6] *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282–83 (3d Cir. 2004).
[7] *Id.* at 283.
[8] *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).
[9] *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988).
[10] *See Healy v. James*, 408 U.S. 169, 189 (1972) (quotation marks and citation omitted); *Hazelwood Sch. Dist.*, 484 U.S. at 272.
[11] *See Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973).

Here, the amended complaint alleges that "S.S. engaged in conduct protected by the First Amendment, specifically reporting instances of bullying to her assistant principal, Mr. Capoccioni."[12] That reporting is the alleged protected activity, and we conclude that the amended complaint sufficiently pleads this prong of S.S.'s First Amendment retaliation claim.

*2. Retaliatory action*

Neither party to this suit disputes that G.S. was initially told that S.S. was suspended for fighting. However, G.S. argues that the school officials retaliated against S.S. for reporting incidents of bullying by suspending her for three days. The officials counter that the alleged retaliatory conduct was the refusal to remove the suspension and "not the imposition of the suspension itself."[13] According to the officials, "the Amended Complaint lacks facts that set forth a plausible showing that any Individual Appellee took sufficient retaliatory action against S.S. because she engaged in any expressive activity."[14] We disagree.

In reviewing a Rule 12(b)(6) dismissal, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[15] Again, the amended complaint alleges that "S.S. engaged in conduct protected by the

---

[12] App. 42 (Am. Compl. ¶ 163).
[13] Appellees' Br. at 4.
[14] *Id.*
[15] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotation marks and citation omitted).

First Amendment, specifically reporting instances of bullying to her assistant principal, Mr. Capoccioni."[16] It later alleges that Inglese decided to uphold the suspension in part because of S.S.'s prior reporting altercations with other students. Construing these allegations in the light most favorable to S.S., as we must at this early stage of litigation, we conclude that the amended complaint sufficiently alleges that S.S.'s protected speech was a factor contributing to the three-day suspension imposed upon her. Though Inglese's comments were explicitly made in the context of the decision to uphold the suspension, his comments nevertheless raise a non-speculative possibility that S.S.'s reporting played a role in the initial decision to suspend her as well.[17] Common sense alone establishes that a three-day suspension from school would deter a person of ordinary firmness from exercising his or her constitutional rights. Accordingly, this prong of the First Amendment retaliation claim is sufficiently pled.

### 3. Causation

The causation element of a First Amendment retaliation claim requires either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[18] Here, S.S.'s reports of bullying occurred over a period of many

---

[16] App. 42 (Am. Compl. ¶ 163).

[17] To be sure, we acknowledge the likelihood that S.S. was truly suspended, *in part*, for being a part of a fight. Indeed, we have not required that the protected activity in a First Amendment case be the *sole* factor influencing an official's retaliatory response. Still, Inglese's comments potentially indicate that a concern about S.S.'s protective speech existed at the time she was originally suspended.

[18] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

months, beginning in the spring of 2016 and continuing until the day of the altercation on December 16, 2016. S.S.'s most recent alleged protected conduct and the alleged retaliatory action (i.e., the suspension) both occurred on December 16, 2016. This timing is highly suggestive of First Amendment retaliation and is sufficient to establish the required causal link.[19] Moreover, S.S. need not rely solely upon the timing of the retaliation. As discussed above, the amended complaint adequately alleges that S.S.'s prior complaints factored into her suspension given Inglese's statements.

### B. The *Monell* Claim[20]

A school district may incur *Monell* liability under Section 1983 for a violation of an individual's constitutional rights when it implements an official policy or custom that results in a constitutional deprivation.[21] "To satisfy the pleading standard [for such a

---

[19] *See Mirabella v. Villard*, 853 F.3d 641, 651–52 (3d Cir. 2017) (holding that an "unusually suggestive temporal proximity" existed where the alleged retaliatory act occurred on the same day as the constitutionally protected conduct).

[20] As a threshold matter, we observe that G.S. did not plainly assert a *Monell* claim in the amended complaint. The initial complaint asserted two causes of action under 42 U.S.C § 1983: (1) a state-created danger claim against the school administrators, and (2) a claim under *Monell* against the School District and its administrators. Yet the amended complaint asserts only one cause of action—First Amendment retaliation against the School District and its administrators. We have held that "[i]f a party omits a claim from an amended complaint that it would not have been futile to replead, that party can still preserve the claim for appellate review by standing on the dismissed claim despite leaving it out of the amended complaint." *In re Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 517 (3d Cir. 2007). To date, we have "not adopt[ed] a rigid requirement as to what a plaintiff must do to stand on a dismissed complaint." *Id.* Here, both parties argued the dismissed *Monell* claim in their briefs to us and during oral argument before our Court. This is sufficient to meet the flexible requirement that G.S. notify us and the opposing parties that she is standing on her dismissed *Monell* claim. We will therefore also address that cause of action.

[21] *Monell*, 436 U.S. at 694.

claim, a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."[22] In addition, a plaintiff must establish causation by properly pleading that the municipality's policy or custom "was the source of [his or] her injury."[23]

We have held that "municipal liability [under Section 1983] attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[24] The District Court concluded that the amended complaint failed to allege any custom, practice, or policy of First Amendment retaliation. It determined that the amended complaint contained no "allegations as to how the policymakers of the Penn-Trafford School District became aware of a pattern and culture of unconstitutional behavior infringing on students' First Amendment rights or when and under what circumstances such events occurred."[25] The District Court is wrong.

For purposes of a *Monell* claim, "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."[26] A plaintiff must show that an official who has the power to make policy is responsible for the action.[27] When deciding who has policymaking responsibility, "a court must determine which official has final,

---

[22] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[23] *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010).

[24] *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

[25] *Penn Trafford*, 2020 WL 6135729, at *5 (internal quotation marks omitted).

[26] *Bielevicz*, 915 F.2d at 850 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[27] *Andrews*, 895 F.2d at 1480.

unreviewable discretion to make a decision or take an action," a question that is answered by looking to state law.[28]

Under Pennsylvania law, a school board may be the final policymaker with respect to some actions, while the school superintendent may be the final policymaker with regard to other actions.[29] The inquiry into whether Harris acted as a policymaker when he agreed to review S.S.'s suspension is resolved by identifying the final policymaker regarding suspensions in Pennsylvania high schools.

Section 12.6 of the Pennsylvania Administrative Code[30] governs exclusions from school. It states that suspensions of one to ten school days "may be given by the principal or person in charge of the public school."[31] The Pennsylvania School Code provides that district superintendents have final discretion to determine the appropriateness of three-day suspensions.[32] Another section of the School Code provides that a superintendent supervises all matters relating to discipline and holds final authority on such matters.[33]

---

[28] *Id*. at 1481.

[29] *See McGreevy v. Stroup*, 413 F.3d 359, 368–69 (3d Cir. 2005) (a Pennsylvania school board is final policymaker regarding dismissal of employees, but the superintendent is the final policymaker over employee ratings determinations).

[30] 22 Pa. Code § 12.6.

[31] 22 Pa. Code § 12.6(b)(1)(i).

[32] *See* 24 P.S. § 13–1318 ("Every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or misconduct, and any principal or teacher suspending any pupil shall promptly notify the district superintendent or secretary of the board of school directors.").

[33] *See* 24 P.S. § 21-2107 ("Assistant district superintendents . . . . in conjunction with the school principals, inquire into and supervise all matters relating to . . . discipline, and conduct of all schools in their respective districts, and shall report the same when required to the superintendent of schools.").

Pennsylvania statutes thus support the conclusion that Harris possesses final authority over student suspensions.

In *Andrews v. City of Philadelphia*, we explained that in circumstances such as these, where officials without policymaking authority allegedly violate a plaintiff's constitutional rights, a municipality can be held liable only if the final policymaker either acquiesced in the subordinate's decisions or delegated authority to him or her.[34] Here, Defendants acknowledge that Harris is the final policymaker, but they argue that "the only allegations involving Harris are that he met with [G.S.] and refused to remove S.S.'s suspension."[35] But G.S. does not only allege that Harris met with her and refused to remove S.S.'s suspension. She also alleges that Harris told her that he would (1) review the suspension, and (2) contact her after he and Inglese reached a decision. As we have explained, G.S. alleges that Inglese explicitly relied on S.S's protected conduct to justify her suspension (which Harris apparently reviewed). Once again construing these allegations in the light most favorable to the plaintiffs, we conclude that the complaint sufficiently pleads that Harris knowingly acquiesced to the justification Inglese communicated to G.S. If so, Harris's ratification may be chargeable to the School District because his decision regarding S.S.'s suspension was final.

---

[34] 895 F.2d at 1481. Furthermore, the Supreme Court held in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 142 (1988) that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."

[35] Appellees' Br. at 7–8.

Lastly, to maintain a *Monell* claim pursuant to Section 1983, a plaintiff must also plausibly allege that a municipal policy was the proximate cause of her injuries.[36] To establish proximate causation, a plaintiff must demonstrate a "plausible nexus" or "affirmative link" between the municipality's policy and the specific deprivation of constitutional rights at issue.[37] "As long as the causal link is not too tenuous, the question [of] whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury."[38]

As Plaintiffs argue in their brief, "[t]he clear message that the administrators sent to the student body is that students should not report incidents of bullying, and if they do report it, they will be suspended."[39] G.S. alleges facts that, if accepted by a fact-finder, support a claim that the administrators' "clear message" became policy when the School District's superintendent reviewed and approved S.S.'s suspension. The District Court simply failed to appreciate allegations that school authorities were trying to maintain an appearance of civility and order by creating an environment where students "see no evil, hear no evil, speak no evil."

Accordingly, G.S. has plausibly alleged that the School District was the proximate cause of S.S.'s injury, and thus, has successfully pleaded a *Monell* claim. In fact, this case

---

[36] *Bielevicz*, 915 F.2d at 850.
[37] *Id.* at 850–51.
[38] *Id.* at 851 (citation omitted).
[39] Appellants' Br. at 20.

is a clear illustration of why we have stated that "[o]rdinarily, proximate cause cannot be determined on the basis of pleadings but instead requires a factual development at trial."[40]

## II.

For the foregoing reasons, we will vacate the District Court's order dismissing the amended complaint pursuant to Rule 12(b)(6) and remand for further proceedings consistent with this opinion.

---

[40] *Est. of Bailey by Oare v. York Cnty.*, 768 F.2d 503, 511 (3d Cir. 1985).