# United States Court of Appeals for the Federal Circuit

---

**JACK L. FROLOW,**
*Plaintiff-Appellant,*

**v.**

**WILSON SPORTING GOODS CO.,**
*Defendant-Appellee.*

---

2012-1185

---

Appeal from the United States District Court for the District of New Jersey in No. 05-CV-4813, Judge Freda L. Wolfson.

---

Decided: March 15, 2013

---

ARTHUR M. PESLAK, Gertber, Mandel & Peslak, LLC, of Lakewood, New Jersey, argued for the plaintiff-appellant. Of counsel was Manny D. Polotilow, Caesar, Rivise, Bernstein, Cohen, of Philadelphia, Pennsylvania.

JEFFREY A. KEY, Key & Associates, of Chicago, Illinois, argued for defendant-appellee.

---

Before NEWMAN, CLEVENGER, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE, in which *Circuit Judge* CLEVENGER joins with additional views, further additional views filed by *Circuit Judge* MOORE, and concurring opinion filed by *Circuit Judge* NEWMAN.

MOORE, *Circuit Judge*.

Jack L. Frolow appeals from the final judgment of the U.S. District Court for the District of New Jersey in favor of Wilson Sporting Goods Co. (Wilson). Among other issues, Mr. Frolow challenges the district court's entry of summary judgment in favor of Wilson and the court's entry of judgment as a matter of law (JMOL) at the close of Mr. Frolow's case. Because the district court erred when it granted summary judgment, we reverse and remand for the reasons set forth below. We affirm the district court's judgment for all other issues raised on appeal.

## BACKGROUND

This case involves Wilson's alleged breach of a License Agreement. Under the Agreement, Wilson agreed to pay Mr. Frolow royalties for "Licensed Article(s)," defined as "tennis rackets which are covered by one or more unexpired or otherwise valid claims" of Mr. Frolow's U.S. Patent RE33,372 ('372 patent). *Frolow v. Wilson Sporting Goods Co.*, No. 3:05-CV-4813, 2008 WL 8134447, at *3 (D.N.J. Mar. 31, 2008) (*First Summary Judgment Order*). Claim 20 is representative of the claims at issue, claiming a tennis racket with specific properties:

> 20. A complete tennis racket having at least a head portion and a handle portion, said handle having a grip portion suitably adapted for the hand to grip, the end of the grip

> portion being located at the handle portion end of the racket; said head portion supporting a string netting in a plane, said netting having vertical and horizontal strings . . . ;
>
> said racket having a weight distribution providing for the center of percussion located at a distance Cp in inches from the end of the grip portion . . . ;
>
> said racket having a weight distribution providing for the moment of inertia Ia in ounce-inches squared about said longitudinal axis . . . ;
>
> and the magnitude of Ia is greater than 80 ounce-inches squared . . . .

'372 patent col.14 l.37–col.15 l.2. After conducting an audit, Mr. Frolow concluded that Wilson was not paying royalties on all the Licensed Articles and filed suit alleging that Wilson breached the License Agreement and infringed the '372 patent. Due to an arbitration provision in the Agreement, the court limited the breach of contract case to determining which Wilson racket models were Licensed Articles. *Frolow v. Wilson Sporting Goods Co.*, No. 3:05-CV-4813, 2006 WL 891201, at *2–3 (D.N.J. Apr. 5, 2006). It also summarily dismissed Mr. Frolow's patent infringement claim. *Id.* at *4.

The parties litigated the breach of contract issue, disputing whether forty-two racket models were Licensed Articles. Wilson moved for summary judgment that the accused racket models were not Licensed Articles, which

the court granted in part.  The court held that Wilson's test data showed that thirty-seven of the forty-two racket models had a moment of inertia of eighty ounce-inches squared or less and thus did not fall within the scope of the asserted claims.  *First Summary Judgment Order*, 2008 WL 8134447, at *16–20.[1]  Mr. Frolow contested Wilson's test data and pointed to the fact that Wilson had marked fourteen of the rackets with the '372 patent number, arguing that Wilson's marking raised a genuine issue of material fact.  The court rejected Mr. Frolow's marking argument and concluded that Wilson's marking had "no bearing on whether literal or doctrine of equivalents infringement has occurred."  *Id.* at *21.  The court also declined to find that Wilson's marking prevented it from challenging whether the accused racket models were Licensed Articles.  *Id.* at *22.  Finally, for five of the racket models at issue, the court determined that Mr. Frolow raised a genuine issue of material fact that those rackets were Licensed Articles and set the case for trial.  *Id.* at *16–17.

After the final pretrial conference, Mr. Frolow alleged that 299 additional racket models were Licensed Articles.  Wilson moved for summary judgment, contending that Mr. Frolow added the 299 racket models too late in the case and that Mr. Frolow failed to adduce any evidence that the 299 racket models were Licensed Articles.  Wilson also produced an expert report that showed that 82 of the 299 racket models had a moment of inertia of eighty ounce-inches squared or less.  Wilson did not, however, proffer any evidence for the remaining 217 rackets.

---

[1]   The court also concluded that the doctrine of prosecution history estoppel barred Mr. Frolow's doctrine of equivalents theory for the "greater than 80 ounce inches squared" limitation.  *Id.* at *17–20.  We agree.

Mr. Frolow, in a declaration, contested Wilson's test data for the 82 racket models and stated that Wilson had been paying royalties on the 299 racket models. Wilson contended that the payments were "inadvertent" and were "based on the mistaken belief" that the models fell within the '372 patent claims. Reply Mem., at 9, *Frolow v. Wilson Sporting Goods Co.*, No. 3:05-CV-4813 (D.N.J. July 26, 2010), ECF No. 120.

The district court granted Wilson's motion for summary judgment, concluding that Mr. Frolow's attempt to add the 299 racket models was untimely and violated the court's prior orders. *Frolow v. Wilson Sporting Goods Co.*, No. 3:05-CV-4813, 2010 WL 5150161, at *4–5 (D.N.J. Dec. 13, 2010) (*Second Summary Judgment Order*). In addition, the court concluded that summary judgment was appropriate because Mr. Frolow failed to proffer any evidence that the rackets fell within the scope of the '372 patent claims. *Id.* at *5–6.

The parties then tried the issue of whether the five remaining racket models were Licensed Articles. After Mr. Frolow rested his case, the court entered JMOL that the rackets were not Licensed Articles. The court concluded that Mr. Frolow "adduced no testimony whatsoever concerning the head, handle, grip or strings" in the accused tennis rackets as required by the asserted claims, and that the parties did not stipulate to those facts. *Frolow v. Wilson Sporting Goods Co.*, No. 3:05-CV-4813, 2011 WL 2784093, at *3 (D.N.J. July 12, 2011) (*JMOL Order*). The court also concluded that "none of the documents admitted as evidence during trial contain any admissions regarding the head, handle, grip or strings" in the accused tennis rackets. *Id.* The court declined to take judicial notice of those facts because the string netting configuration of tennis rackets was subject to reasonable dispute. *Id.* at *4. The court denied Mr. Frolow's motion

for a new trial, and he appealed.[2]  We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Standard of Review

We review the grant of summary judgment under the law of the regional circuit, here the Third Circuit.  *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011).  The Third Circuit reviews the grant of summary judgment *de novo*.  *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc).  Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At the summary judgment stage, we credit all of the non-movant's evidence and draw all justifiable inferences in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Our function is not to "weigh the evidence and determine the truth of the matter" but instead to determine whether there is a genuine issue for trial.  *Id.* at 249.

We also review a district court's grant of a motion for JMOL under the law of the regional circuit.  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1185 (Fed. Cir. 2002).  The Third Circuit exercises plenary review of the grant of a motion for JMOL.  *McGreevy v. Stroup*, 413 F.3d 359, 363–64 (3d Cir. 2005).  In the Third Circuit, "[a] motion for JMOL under Federal Rule 50(a) should be granted only if, viewing the evidence in the light most favorable to the nonmoving

---

[2]  Wilson argues that Mr. Frolow filed a limited notice of appeal that narrowed the scope of the appeal to the issues in the court's JMOL order.  We do not agree.  Mr. Frolow sufficiently identified the issues on appeal.

party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Id.* at 364 (internal quotations omitted).

## II.  The Fourteen Marked Racket Models

Mr. Frolow argues that the district court erred in granting Wilson's first summary judgment motion because Wilson's marking of fourteen racket models with the '372 patent number estopped it from arguing that those models are not Licensed Articles.  At a minimum, argues Mr. Frolow, Wilson's marking was sufficient to raise a genuine issue of material fact as to whether the fourteen racket models are Licensed Articles.

Wilson responds that Mr. Frolow failed to provide any evidence to support estoppel.  Wilson admits that it marked the fourteen racket models, but contends that it inadvertently mismarked them.  Wilson also argues that its expert report proved that the fourteen racket models were not Licensed Articles because the rackets had a moment of inertia of eighty ounce-inches squared or less.  Thus, argues Wilson, Mr. Frolow failed to raise a genuine issue of material fact as to whether the marked rackets are Licensed Articles.

### A.  Marking Estoppel

Under the doctrine of "marking estoppel" recognized in some circuits, "a party that marks its product with a patent number is estopped from asserting that the product is not covered by the patent." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 890 n.9 (Fed. Cir. 1989).  We note that the Supreme Court has never adopted or approved the doctrine.  Mr. Frolow asks us to adopt this doctrine and to hold that Wilson is estopped from arguing that its fourteen marked rackets fall outside

the '372 patent claims. We decline to create a separate, equitable doctrine unique to patent law, where Congress has spoken and standard evidentiary practices provide adequate remedy.

Congress enacted legislation, recently amended, which provides a remedy for false marking. False Marking Statute, 35 U.S.C. § 292. Marking estoppel cases explain that the rationale for the doctrine is to prevent harm to the public which might be caused by mismarking. *See SmithKline*, 859 F.2d at 890–91 (quoting *Crane Co. v. Aeroquip Corp.*, 364 F. Supp. 547, 560 (N.D. Ill. 1973)). But Congress expressly addressed this exact harm and crafted a remedy which it determined was appropriate to remedy any harm to would-be competitors or innovators. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 16(b)(2), 125 Stat. 284, 329 (2011) (amending 35 U.S.C. § 292(b)). Congress sought to protect the public from false marking by providing a remedy in the form of civil damages to persons "who ha[ve] suffered a competitive injury as a result of" improper patent marking. *Id.* If the mismarking was done "with the intent . . . of deceiving the public" or some similar specific intent, the statute provides for recovery under either the civil damages provision (by an injured competitor) or the penalty provision (by the United States). 35 U.S.C. § 292(a). Equity should not rush in where an adequate remedy at law exists. It would be inconsistent with this legislation to adopt a different and broader remedy for the same harm.

Although we do not endorse Mr. Frolow's patent marking doctrine, we do agree that the fact that Wilson marked their products with his patent number is a fact which supports his allegation that Wilson's products fall within the patent claims. The practice of marking a product with a patent number is a form of extrajudicial admission that the product falls within the patent claims.

Extrajudicial admissions of fact are statements made by a party outside the context of the litigation that are introduced into evidence by that party's opponent. *E.g.*, *Martha Graham School and Dance Foundation, Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 644 (2d Cir. 2004) (holding that the defendant's list of ballets "filmed and sold" constituted an admission in copyright infringement action); *Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 910–11 (11th Cir. 2012) (holding that statement by defendants' Chairman that the defendant was "in the process of re-formulating the product" in response to defects was admissible in products liability action). Generally, extrajudicial admissions of facts, such as patent marking, are simply evidence that may be countered by the party that made the admission. These admissions are not "binding," and "may be controverted or explained by the party" that made the statement. *See* 30B Michael H. Graham, *Federal Practice and Procedure* § 7026 (interim ed. 2006) (citing 4 John Henry Wigmore, *Evidence in Trials at Common Law* §§ 1058, 1059 (1972)). The doctrine of marking estoppel would conflict with the normal evidentiary treatment of these sorts of admissions. We decline to adopt a special equitable doctrine for the treatment of these "admissions."

In this case, the district court erred when it held that the defendant's marking was irrelevant. Placing a patent number on a product is an admission by the marking party that the marked product falls within the scope of the patent claims. The act of marking is akin to a corporate officer admitting in a letter or at a deposition that the company's product infringes a patent. A defendant, of course, is free to introduce counter evidence or explanation. Thus, the district court erred when it concluded that Wilson's marking had "no bearing on whether literal or

doctrine of equivalents infringement has occurred." *First Summary Judgment Order*, 2008 WL 8134447, at *21.

Like any other type of extrajudicial admission, evidence of marking is relevant evidence. And such an admission, that the accused product falls within the asserted claims, is certainly relevant on the issue of infringement. Of course, whether a party's marking, in view of the record as a whole, raises a genuine issue of material fact, will depend on the facts of each case.

### B. Whether Wilson's Marking Raises a Genuine Issue of Material Fact

The district court granted Wilson's motion for summary judgment that the marked racket models were not Licensed Articles. At summary judgment, Wilson produced test data that showed that the racket models had a moment of inertia of eighty ounce-inches squared or less. Mr. Frolow submitted an expert declaration contesting Wilson's test data and provided evidence of Wilson's marking. He argued that Wilson's continuous marking of the fourteen racket models with the '372 patent was circumstantial evidence that those racket models are Licensed Articles.

We conclude that in this case, where Mr. Frolow contested whether the rackets fall within the scope of the claims and provided evidence of marking, that summary judgment is improper. To be clear, we are not holding that the fact of marking alone is enough to survive summary judgment in every case. If a patentee admits that the accused product does not infringe, evidence of marking will not raise a genuine issue of material fact. *See SmithKline*, 859 F.2d at 890–91. Similarly, if it is beyond dispute that the accused product was mis-marked, summary judgment will be appropriate. But evidence of marking is circumstantial evidence that the marked

product falls within the patent claims and can preclude summary judgment in appropriate cases. Accordingly, the district court erred when it concluded that Wilson's marking had "no bearing" on whether the rackets were Licensed Articles. *First Summary Judgment Order*, 2008 WL 8134447, at *21.

It is hornbook law that a patentee may prove an issue of fact "by either direct or circumstantial evidence." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986)). Indeed, "circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960). In reviewing the evidence, our task is to discern whether "the record *taken as a whole* could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis added).

The evidence in this case points in both directions. Wilson's expert report tends to show that its rackets are not Licensed Articles and Mr. Frolow's evidence of marking tends to show that those rackets are Licensed Articles. It is the job of the fact-finder—not the court at summary judgment—to weigh that evidence and render a decision. *Anderson*, 477 U.S. at 255. We therefore reverse the court's grant of summary judgment and remand for further proceedings.

### III. The 299 Racket Models

Mr. Frolow argues that the court erred in granting Wilson's second motion for summary judgment on the 299 racket models. Before the district court, Wilson moved for summary judgment that the 299 racket models were not Licensed Articles. It argued that Mr. Frolow added the

models too late in the case and failed to submit any evidence that the 299 models were Licensed Articles. For 82 of the 299 models, Wilson produced an expert report that concluded that those models had a moment of inertia of eighty-ounce inches squared or less and were not Licensed Articles. Wilson did not provide any data for the remaining 217 racket models.

In response, Mr. Frolow submitted a declaration disputing Wilson's test data and stating that Wilson had been paying royalties on the 299 racket models.[3] Wilson admitted that it paid royalties for the racket models but asserted that these payments were mistaken.

## A. Whether Wilson's Past Royalty Payments Raises a Genuine Issue of Material Fact

We agree with Mr. Frolow that the district court erred in granting summary judgment. Because the License Agreement obligates Wilson to pay royalties based upon its sales of Licensed Articles, Wilson's history of paying royalties on the 299 racket models is circumstantial evidence that those models are Licensed Articles.

For 217 of the racket models, Wilson failed to introduce any evidence that those racket models fall outside the '372 patent claims. Wilson admitted that it had been paying royalties on the 217 rackets. Under these circumstances, it was improper to grant summary judgment.

---

[3]    Mr. Frolow also argues that Wilson should be estopped from denying that the 299 rackets models are Licensed Articles because Wilson had been paying royalties on those models. Licensing payments, like marking, is circumstantial evidence in the form of an extrajudicial admission. We decline, however, to create a new equitable doctrine which would prevent a licensee from ever arguing that its Licensed Article fell within the patent claims.

For 82 of the racket models, Wilson provided test data that it argued established that the racket models were not License Articles. Mr. Frolow disputed the accuracy of Wilson's data. He also provided evidence that Wilson had been paying royalties on the 82 racket models. This evidence, like Mr. Frolow's marking evidence, constitutes admissible circumstantial evidence that the rackets fell within the terms of the patent claims. In light of this competing evidence, we conclude that Mr. Frolow raised a genuine issue of material fact and reverse the district court's grant of summary judgment.

This is not to say that evidence of past royalty payments will raise a genuine issue of material fact in every case. For example, had Mr. Frolow admitted that Wilson's test data for the 82 racket models was accurate, this would be a different case and summary judgment would be appropriate for 82 of the 299 racket models. There may be other sets of facts which would warrant summary judgment despite a history of licensing payments. But evidence of past royalty payments is circumstantial evidence that may preclude summary judgment in appropriate cases. And we concluded that the evidence is this case raises a genuine issue of material fact.

## B. The District Court's Discretionary Power to Dismiss 299 Racket Models

The district court also based its summary judgment on the fact that Mr. Frolow identified the racket models too late in the proceedings. *Second Summary Judgment Order*, 2010 WL 5150161, at *4–6. That was in error. Excluding the racket models on the basis that Mr. Frolow failed to timely identify them is certainly within a court's discretionary power. Such a decision would result in dismissal of the claims, not a judgment on the merits that the 299 racket models are not Licensed Articles. It is true

that Mr. Frolow failed to identify the racket models in the pretrial order, during discovery, in his expert reports, or in connection with the first summary judgment motion. And we leave it to the sound discretion of the district court to determine whether the 299 racket models should be included in this proceeding on remand. *See Phx. Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1475–75 (3d Cir. 1988). But we do conclude that Mr. Frolow has submitted sufficient evidence to preclude a judgment on the merits in this case as to those models.

## IV. Burden of Proof on Remand

Neither party raises the issue of who will have the burden of proof in the proceedings on remand. This may be because "[p]erhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting C. Mueller & L. Kirkpatrick, Evidence § 3.1, p. 104 (3d ed. 2003)); *see also Stockton East Water Dist. v. United States*, 583 F.3d 1344, 1360 (Fed. Cir. 2009) ("Since this is a suit for breach of contract, it is elementary that the plaintiff . . . ha[s] the burden of persuasion on the issues of whether there is a contract, and whether that contract was breached . . . ."). Judge Newman's concurrence, however, contends that on remand the burden should shift to Wilson to prove that its rackets are not Licensed Articles because Wilson marked some rackets with the '372 patent number and historically paid royalties on other rackets.

This is incorrect. New Jersey law is clear that "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained

damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007); *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 433 (N.J. 2009) ("[T]he burden of proof was upon plaintiffs to establish that defendants breached the contract."). Likewise, "a breach of contract will not be presumed." *Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 438 (App. Div. 1990).

The concurrence fails to cite any authority that a party's extrajudicial admission shifts the burden of proof from the plaintiff to the defendant. Indeed, all the authority upon which the concurrence relies relates to evidence a court may consider when interpreting a contract, *e.g.*, N.J. Stat. Ann. § 12A:2-208 cmt. n.1, or whether a party, based on its conduct, can waive its right to enforce a contract, *e.g.*, *Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 874 (10th Cir. 1981). Neither of those issues is present in this case, and none of that authority mentions, let alone suggests, that a defendant has the burden to disprove breach. The issue is whether Wilson's marking and past royalty payments are evidence that the goods in question are "Licensed Articles," i.e., goods which fall within the patent claims. This evidence does support Mr. Frolow. It does not, however, create some sort of presumption which shifts the burden to Wilson to disprove breach; it simply supports Mr. Frolow's breach of contract claim.

V. The Five Racket Models Contested at Trial

Lastly, Mr. Frolow argues that the district court erred in entering JMOL at the close of his case. According to Mr. Frolow, it was beyond dispute that Wilson's five racket models met the head, handle, grip, and string netting limitations of the '372 patent claims. Mr. Frolow asserts that the only dispute between the parties was whether Wilson's rackets met the moment of inertia and

center of percussion limitations, and, accordingly, Mr. Frolow focused his testimony on those issues.

Wilson responds that the district court properly entered JMOL at the close of Mr. Frolow's case. Wilson contends that Mr. Frolow bore the burden of proof at trial and failed to introduce any evidence that the five disputed rackets met the basic limitations of the '372 patent claims. Wilson specifically argues that Mr. Frolow failed to prove that the five rackets have a head, handle, grip, and string netting. Moreover, asserts Wilson, the court correctly concluded that Wilson did not stipulate to those facts and rightly declined to take judicial notice of them.

Wilson's argument that the five tennis rackets lack a head, handle, grip, or a string netting borders on frivolous. While it is true that Mr. Frolow bore the burden to prove that the five racket models were covered by an asserted claim of the '372 patent, we caution parties to limit the scope of the disputed issues to facts that are truly disputable. And on this record, we fail to see a good faith basis upon which Wilson could have argued that its tennis rackets lacked heads, handles, grips, or strings. Wilson's own product evaluation reports, introduced into evidence, state that the rackets tested had a "head" and a "handle," and were "strung" and "gripped." J.A. 2530–52. Because the claims do not require a specific arrangement for these basic racket elements, Wilson's product evaluation reports are substantial evidence that the five racket models had a head portion, handle portion, grip portion and strings. Moreover, those facts are not subject to reasonable dispute—every tennis racket has a head, handle, grip, and strings.

While the claim limitations regarding the head, handle, and grip are general in nature (any head, handle or grip would meet them), the string limitation is not. The

claims require that the string netting have "vertical and horizontal strings." The district court is correct that Mr. Frolow failed to introduce any evidence at trial that shows that the five racket models met the "string netting having horizontal and vertical strings" limitation. He did not introduce any evidence that depicted the racket models or described their respective string netting configurations. He also testified that he had never seen the five racket models or an image or visual representation of them. *JMOL Order*, 2011 WL 2784093, at *4. In addition, his attorney admitted that Wilson did not at any point stipulate that the five racket models had horizontal and vertical strings. Tr. of Proceedings, at 58–60, *Frolow v. Wilson Sporting Goods Co.*, No. 3:05-CV-4813 (D.N.J. Aug. 16, 2011), ECF No. 151. And we cannot conclude that the district court abused its discretion when it declined to take judicial notice that all tennis rackets have horizontal and vertical strings. Wilson represented, and Mr. Frolow did not dispute, that some tennis rackets do not have horizontal and vertical strings but instead have string nettings with diagonal or fan-shaped string configurations. *JMOL Order,* 2011 WL 2784093, at *4. Accordingly, we affirm the district court's entry of JMOL as to the five racket models contested at trial.

CONCLUSION

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, the decision of the district court is

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

Costs to Plaintiff-Appellant.

# United States Court of Appeals for the Federal Circuit

---

**JACK L. FROLOW,**
*Plaintiff-Appellant,*

**v.**

**WILSON SPORTING GOODS CO.,**
*Defendant-Appellee.*

---

2012-1185

---

Appeal from the United States District Court for the District of New Jersey in No. 05-CV-4813, Judge Freda L. Wolfson.

---

CLEVENGER, *Circuit Judge*, additional views.

I write to explain why this is an unusual case. In earlier proceedings, Wilson brought a summary judgment of non-infringement, seeking to show that the 14 racket models which Wilson had marked with Frolow's patent number did not in fact meet the limitations of Frolow's patent. Because Licensed Articles are defined as goods that infringe the patent, Wilson's summary judgment of non-infringement was intended to prove that the 14 racket models are not Licensed Articles.

In the summary judgment proceedings, Frolow unsuccessfully sought to undermine Wilson's evidence of non-infringement. On appeal to this court, Frolow did not

challenge the holding by the district court that the 14 racket models fail to meet the moment of inertia claim limitation. Instead, Frolow argued that summary judgment cannot lie where there is evidence of marking, notwithstanding the fact that the moment of inertia limitation is not found in the 14 racket models.

On remand, the district court must consider the evidence of marking, because, as the court concludes, marking is at least some evidence that Wilson may have thought that the rackets were covered by the patent. However, not all evidence, otherwise relevant, is admissible at trial to the jury. Under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury...." Under the circumstances of this case, where it has been established that the 14 racket models do not satisfy the moment of inertia limitation, it may well be that the limited probative value of Frolow's marking evidence is outweighed by the risk that Wilson would be unfairly prejudiced by its admission, or that the evidence would mislead or confuse the jury. *Cf., e.g.,* *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (it was abuse of discretion under Rule 403 to admit a settlement agreement having probative value that was "greatly outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury.")

The question of whether Frolow's marking evidence should be excluded under Rule 403 can be resolved on a motion *in limine*, before a jury is empaneled and judicial resources are expended at trial.

Because of the previous determination that the 14 racket models do not meet the moment of inertia limita-

tion, this case is unlike other cases in which a defendant's admission that a product met asserted claims is balanced against doubt as to whether the product in fact met the limitations of the claim. In such circumstances, where the jury must decide if the product meets the limitations of the claim, there is less risk of unfair prejudice, confusing the issues or misleading the jury associated with admitting the defendant's admission into evidence. *See, for example, Buckley v. Airshield Corp.*, 116 F. Supp. 2d 658, 669 (D. Md. 2000).

# United States Court of Appeals
# for the Federal Circuit

_____

**JACK L. FROLOW,**
*Plaintiff-Appellant,*

**v.**

**WILSON SPORTING GOODS CO.,**
*Defendant-Appellee.*

_____

2012-1185

_____

Appeal from the United States District Court for the District of New Jersey in No. 05-CV-4813, Judge Freda L. Wolfson.

_____

MOORE, *Circuit Judge*, additional views.

I write in response to Judge Clevenger's additional views. As an initial matter, I agree completely that there may well be circumstances when evidence of a defendant having marked their product with a patent number could be excluded pursuant to Federal Rule of Evidence 403. For example, if it was admitted or established as a matter of law that defendant's marking was inadvertent, then admission of the marking evidence would be "substantially outweighed by a danger or one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Alternatively, if the parties agreed that an element of the claim was not present in

the accused device, then marking evidence could be unfairly prejudicial.

I write separately because I do not agree with Judge Clevenger's claim that "Under the circumstances of this case, where it has been established that the 14 racket models do not satisfy the moment of inertia limitation, it may well be that the limited probative value of Frolow's marking evidence is outweighed by the risk that Wilson would be unfairly prejudiced by its admission." In this case, noninfringement was established in circumstances where the judge refused to consider some evidence of infringement—namely the marking. Mr. Frolow does not admit or concede that the accused devices do not meet the moment of inertia limitation. In fact, he introduced evidence to the contrary. There is no motion in limine in this case nor is it my job to prophesize on the outcome of a motion that has never been filed. This circuit has cautioned that "[e]vidence should be excluded until Rule 403 only sparingly" and that the balance under the rule "should be struck in favor of admissibility." *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992). I leave the application of this law to the district court judge.

# United States Court of Appeals
## for the Federal Circuit

JACK L. FROLOW,
*Plaintiff-Appellant,*

v.

WILSON SPORTING GOODS CO.,
*Defendants-Appellees.*

2012-1185

Appeal from the United States District Court for the District of New Jersey in No. 05-CV-4813, Judge Freda L. Wolfson.

NEWMAN, *Circuit Judge,* concurring.

I agree that it is appropriate to remand to the district court to resolve this dispute. I write separately because the court appears to ignore, or trivialize, the power and significance of Wilson's consistent marking of 14 racket models with Frolow's patent number during the life of the Frolow-Wilson License Agreement. Throughout the term of the Agreement, Wilson's position was that these marked racket models were Licensed Articles, and by so marking the rackets Wilson received the benefit of the patent. This was not an inconsequential puff—it was an announcement and admission that the rackets were Licensed Articles under the contract.

Wilson represented to Frolow, and the world at large, that these rackets embodied Frolow's technology and Wilson would pay Frolow royalties. Only when Frolow sought payment, did Wilson retreat. Frolow became aware of Wilson's renege only *after* Wilson exploited the full value of Frolow's patents as the exclusive licensee—so that Frolow could not license other racket manufacturers. At a minimum Wilson, not Frolow, bears the burden of showing whether Wilson should now (after patent expiration) be excused from paying for the benefit exclusively licensed from Frolow.

On remand Wilson bears the burden of coming forward with evidence adequate to show that it should not be held to its own long-standing belief that the marked rackets were Licensed Articles, a contract interpretation on which both parties relied for the entire life of the contract. I do not share my colleagues' theory that the parties' view of their contract throughout its term is merely "circumstantial evidence" of a royalty obligation due.

## DISCUSSION

The Restatement (Second) of Contracts § 202 (1981) states that

> Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.

Under New Jersey law, a course of performance is "the best indication" of what the parties meant by their Agreement. N.J. Stat. Ann. §12A:2-208 cmt. n.1 ("The parties themselves know best what they have meant by their words of agreement and their action under that

agreement is the best indication of what that meaning was."); N.J. Stat. Ann. §12A:2-202 cmt. n.2 ("the course of actual performance by the parties is considered the best indication of what they intended the writing to mean."); *see also* N.J. Stat. Ann. §12A:2-208(3) ("course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance."); N.J. Stat. Ann. §12A:2-209(5) (waiver affecting an executory portion of the contract may be retracted only by "reasonable notification" and if not "unjust in view of a material change of position in reliance on the waiver.").

Wilson states that its marking of the 14 rackets was "inadvertent." The only record at trial and on appeal, however, is that the rackets were *intentionally* marked on Wilson's belief that the rackets were "covered by" the claims of the licensed Frolow '372 patent. *See* Expert Report of W. Severa 50, ECF No. 38-5 ("the mis-marking occurred under the mistaken impression that the racquets were covered by the claims of the '372 patent."). Wilson has put forth no evidence of when its position changed. Frolow had no notice of Wilson's changed position until after his audit. In such circumstances, a jury could determine that Wilson's unexplained and repeated marking conduct constituted a waiver. *See Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 874 (10th Cir. 1981) (remanding contract dispute under U.C.C. §2-209(5) for factual determination of whether creditor's course of performance in accepting late payments constituted waiver and, if so, whether the creditor reasonably retracted the waiver "before taking [the debtor] to court."). Wilson's post-expiration test data is relevant only if the jury determines that Wilson should be permitted to change its position after Frolow performed his obligations under the contract.

The same reasoning applies to the racket models on which Wilson had initially paid royalties. Indeed, in this very case, the district court relied on Wilson's payments

on racket head covers as a course of performance establishing that racket head covers were Licensed Articles. *See Frolow v. Wilson Sporting Goods Co.*, 3:05-CV-04813-FLW, 2008 WL 8134447, at \*22 (D.N.J. Mar. 31, 2008) (citing UCC §2–208(1)). The court explained that

> to the extent that the course of performance under the License Agreement shows that royalties were paid to Frolow based on sales of racquet head covers for racquet models that are Licensed Articles, those head covers are themselves Licensed Articles; conversely, to the extent that the course of performance under the License Agreement shows that royalties were not paid to Frolow based on sales of racquet head covers for racquet models that are Licensed Articles, those head covers are not Licensed Articles.

*Id.* Wilson did not appeal that ruling.

Frolow provided his technology to Wilson by exclusive license and could not grant licenses to others. He cooperated in Wilson's lawsuits enforcing Frolow's patents against Wilson's competitors, *see Wilson Sporting Goods Co. v. Head Sports, Inc.*, 98 C 1315, 1999 WL 89776 (N.D. Ill. Feb. 9, 1999) (alleging that "three of Head's most popular tennis rackets infringe a patent held by Jack Frolow and licensed to Wilson Sporting Goods Co."); *Prince Sports Group, Inc. v. Wilson Sporting Goods Co.*, 91 F.3d 167 (Fed. Cir. 1996) ("The baseline for this action is a sublicense agreement . . . whereby Prince was to pay Wilson royalties as its sublicensee under the Frolow patents.").

Wilson admitted significant failures in payments to Frolow. On Frolow's initial audit, Wilson admitted to unpaid royalties in the amount of $694,044.35, and tendered that amount to Frolow.

The majority opinion analogizes Wilson's marking and payment activities to "a corporate officer admitting in a letter or at a deposition that the company's product infringes a patent," Op. at 9, yet curiously does not put these admissions in the contract context and holds that the admissions do not relieve Frolow of the obligation of proving infringement. The majority ignores that Wilson's "admissions" were made repeatedly, over a long period of time, with commercial benefit to Wilson, and in a manner consistent with accruing royalty obligations. A trier of fact could certainly find that Wilson's conduct was more than a trivial "extrajudicial admission," but was direct evidence of obligations under the Agreement.

Finally, the majority's reference to the recently amended false marking statute, 35 U.S.C. §292, is inapt. The false marking statute was a *qui tam* statute that provided a bounty for persons who spotted products marked with expired patents; it was amended to remedy litigation abuse. There is absolutely no relationship to the patent license and breach claims herein.

CONCLUSION

New Jersey statutes and precedent state the general rule that a party to a contract who establishes a course of performance of the contract, with no notice or objection, may be bound by that performance. Wilson's "admissions" through marking and paying royalties on rackets are of great evidentiary weight in contract law, and place on Wilson the contract law burden of establishing that some different interpretation should now be placed on this expired contract. It is incorrect now to place on Frolow the patent-law burden of proving infringement as if there were no contract, no performance, no contrary interpretation and no reliance. Contract interpretation is a matter of contract law. Although I concur in remanding to the district court for further proceedings, I write separately to emphasize that these are proceedings under a contract

that has been fully performed and whose term has fully run.