**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2130
_____

PASCAL DOUGBOH,
                              Appellant

v.

CISCO SYSTEMS, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-13-cv-04267)
District Judge:  Honorable William J. Martini

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 1, 2018
Before:  JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 20, 2018)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pascal Dougboh appeals from the District Court's orders granting summary judgment to the defendant and denying Dougboh's motion pursuant to Federal Rule of Civil Procedure 60(b)(3). For the following reasons, we will affirm.

In July 2013, Pascal Dougboh filed a complaint in the United States District Court for the District of New Jersey, alleging that Cisco Systems Inc. ("Cisco") violated Title VII of the Civil Rights Act of 1964 by declining to hire him on account of his race. Dougboh submitted "hundreds" of applications to Cisco and claimed that the failure to hire occurred on June 15, 2012, "and other dates before & after." Dougboh subsequently filed an amended complaint in April 2014, restating his original claim and adding that "[i]n the EEOC action, defendant Cisco Systems misrepresented or presented a misleading picture of my employment application history with them, including omitting key facts which support my claim." In November 2015, Dougboh filed a motion to file a (second) amended complaint, which was denied by the District Court on May 12, 2016.

In June 2016, Cisco filed a motion for summary judgment, arguing that Dougboh failed to exhaust his administrative remedies, that some of his claims were time-barred, and that he failed to establish a prima facie case of discrimination for failure to hire. On October 20, 2016, the District Court granted Cisco's motion, finding that the claims arising from job applications prior to 2012 were time-barred, and that the remaining claims were meritless. Shortly thereafter, Dougboh filed a Rule 60(b)(3) motion, which was denied by the District Court on April 19, 2017.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court's decision granting summary judgment. See

McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a District Court's denial of relief under Rule 60(b) for abuse of discretion. See Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir. 2008). To prevail on a Rule 60(b)(3) motion, the moving party must establish, by clear and convincing evidence, see Brown v. Pa. R.R. Co., 282 F.2d 522, 527 (3d Cir. 1960), that the adverse party engaged in fraud or other misconduct, and that this misconduct prevented the moving party from fully and fairly presenting her case, see Stridiron v. Stridiron, 698 F.2d 204, 206–07 (3d Cir. 1983).

On appeal, Dougboh argues primarily that Cisco declined to hire him based on his race – African-American – and the District Court failed to consider the evidence that he submitted showing that Cisco provided false and inaccurate documents regarding the individuals hired for the positions in question. Because Dougboh has not introduced direct evidence of discrimination, we analyze his claims under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under this framework, for a plaintiff seeking to establish a prima facie case for "failure to hire," a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position he applied for; (3) he was subjected to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to his to fill the position. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d

3

Cir. 2003). Defendants can rebut a successful prima facie case by providing a legitimate, non-discriminatory reason for their actions. Id. If such a reason is offered, the burden shifts back to the plaintiff to demonstrate that the reason was "merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Id.

We agree with the District Court that while Dougboh belongs to a protected class, possessed the necessary certifications and education to qualify for the positions, and was subject to adverse employment actions, he fails to raise an inference of discriminatory intent. In support of his allegations, Dougboh alleges that he was repeatedly denied a job offer; that he was asked to provide his race when completing Cisco's online applications; that Cisco was previously sued for race discrimination by other applicants; and that after a 2007 interview, one of Cisco's employees told him that his accent was problematic, and that he talked too fast. However, three Cisco employees who reviewed Dougboh's 2012 applications stated in their summary judgment affidavits that they had no knowledge of his race when they declined to interview him.[1] The Cisco employees who interviewed Dougboh in 2010 and 2011 obviously knew his race, but the record provides no basis for attributing that knowledge to the separate employees who declined Dougboh's 2012 applications. See Sarullo, 352 F.3d at 799 (holding adverse employment action does not

---

[1] When creating their profiles online, applicants are prompted to identify their race and gender, because Cisco is a federal government contractor and is required to track the race and gender of its applicants. See 41 C.F.R. § 60-1.12(a), (c)(1)(ii). However, Cisco provided evidence that information on race and gender is kept in a confidential file used only for federal and state EEO requirements and is not accessible to decision-makers during the hiring process, and Dougboh points to no evidence for us to question that explanation.

in isolation raise an inference of discrimination; the inference may be raised only if the relevant decision-maker has knowledge of the plaintiff's status as a protected class member). As a result, Dougboh has failed to put forth sufficient evidence from which a reasonable factfinder could draw an inference of unlawful discrimination based on his race. See Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).

Even if Dougboh were able to raise an inference of discrimination, however, he has failed to present any evidence that Cisco's legitimate, non-discriminatory reasons for not hiring him were pretextual. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). The record shows that Cisco's hiring staff believed Dougboh to possess less technical skill and relevant experience than other applicants. The hiring staff was also concerned that Dougboh's resume did not illustrate recent periods of sustained employment, and that by 2012, he had applied for hundreds of positions at the company. The record is devoid of even a hint of racial animus, and Dougboh has failed to provide any support beyond mere suspicion for the inference that any of the alleged adverse actions taken against him were motivated by his race. In fact, of the 66 individuals who were ultimately hired by Cisco, 15 self-identified themselves as "Black" or "African-American." See Ansell v. Green Acres Contracting Co., 347 F.3d 515, 524 (3d Cir. 2003) ("While not conclusive, an employer's favorable treatment of other members of a protected class can create an inference that the employer lacks discriminatory intent."). Because Dougboh has failed to provide evidence from which a factfinder could reasonably infer that Cisco's proffered reasons for denying Dougboh employment are

5

pretext for discrimination, the District Court properly granted summary judgment to Cisco as to Dougboh's claim. See Fuentes, 32 F.3d at 764-65.[2]

The District Court was also correct in denying Dougboh's Rule 60(b)(3) motion because he failed to provide "clear and convincing evidence" that Cisco deliberately submitted misleading information or otherwise interfered with Dougboh's ability to present his case. During discovery Dougboh requested that Cisco provide information about applicants whom Cisco chose to hire instead of Dougboh for the 2012 Sourcing Requisitions and Herndon positions. On April 23, 2015, Cisco produced a spreadsheet with a list of 12 of the 16 candidates who were hired for the Herndon positions.[3] On June 19, 2015, Cisco produced a list of 21 individuals whom it believed were hired in connection with the Sourcing Requisitions.[4] However, counsel for Cisco stated in her summary judgment affidavit that it was very difficult to figure out who was ultimately hired because Sourcing Requisitions are used by multiple recruiters in multiple locations

---

[2] On appeal, Dougboh also appears to be claiming that he was improperly denied the opportunity to file an Amended Complaint adding an age discrimination claim. Dougboh moved to amend his complaint in November 2015, over two years after he filed his original complaint, one year after the court-ordered deadline to amend pleadings, and one month after the close of discovery. Because Dougboh had failed to include his age discrimination claim in his Charge of Discrimination with the EEOC, the District Court properly denied his motion to amend. See 29 U.S.C. § 626(d)(1) (providing "no civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]."); see also Ruehl v. Viacom, Inc., 500 F.3d 375, 382 (3d Cir. 2007).

[3] At the time, Cisco was unable to locate information about the remaining four positions.

[4] This included the names of the 12 individuals from the Herndon list because the Sourcing Requisitions were used to help find candidates for the Herndon positions.

to create a pipeline to fill numerous future requisitions. After the close of discovery, Cisco realized that the list was not correct and produced corrected information consisting of: (1) an updated spreadsheet listing all 16 hires for the Herndon positions (including the 12 hires on the original list); and (ii) a new spreadsheet containing the names of 50 candidates who were hired in connection with the Sourcing Requisitions. Cisco immediately notified the District Court and Dougboh of the error and consented to re-opening discovery, which Dougboh declined.

Despite this explanation, on appeal Dougboh continues to rely on the old spreadsheets and base his conclusions on inaccurate information. He also misinterprets the data provided by Cisco. For example, Dougboh claims that the list of 50 hired individuals shows that one interviewer did not have any applicants until July 23, 2012, for a job that he applied for on July 21, 2012. Thus, he claims that Cisco's rejection on July 22, 2012, because Cisco had "identified other candidates for this position" that were "more competitive," was merely pretext for discrimination. However, with respect to the spreadsheets containing applicant hire data, Dougboh mistakenly conflates the "date opened" with the date the candidate applied for the position – the column "date opened" actually refers instead to the date that the requisition was formally opened. The spreadsheets do not contain any data as to when the applicants applied, interviewed, or were hired, only the dates when the requisitions opened or closed.

Dougboh also identifies two individuals who he claims could not have possibly been hired for the Herndon positions because they were already working for Cisco. However, Cisco stated that it frequently hires internal candidates for other positions.

7

Because Dougboh fails to present any evidence that Cisco committed "fraud . . . misrepresentation, or misconduct by an opposing party," the District Court properly denied his motion for relief from judgment. Fed. R. Civ. P. 60(b)(3); Stridiron, 698 F.2d at 207.

For the foregoing reasons, we will affirm the District Court's judgment. Cisco's motion for leave to seal portions of its Supplemental Appendix, Volume 2 because the documents contain private and personal information about non-parties and are designated "Confidential" pursuant to the parties' Protective Order, see L.A.R. 106.1; In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001), is denied as presented. We will direct the Clerk's Office to seal the identified portions of Cisco's Supplemental Appendix, Volume 2 for twenty-five years. Dougboh's motion to strike Cisco's Supplemental Appendix, Volume 2 is denied. See Fed. R. App. P. 30(a); L.A.R. 30.3.